JOHN J. CORCORAN

v.

THE LEHIGH AND FRANKLIN COAL COMPANY.

*Filed at Ottawa October 31, 1891.*

1. CONTRACT—*option to buy or sell—whether void.* Where a coal company sent a written offer to a coal dealer to sell and deliver a certain quantity of coal at the dock of the latter at prices named, in which offer, after reciting the terms of payment, etc., it was stated, "should you require any coal on our dock, we will name you fifty cents per ton in advance of above prices during the season, provided you purchase the above order from us," which offer was accepted: *Held,* that the offer and acceptance constituted a complete contract for the sale and purchase of 12,000 tons of coal, independent of the option clause, but that, in so far as an option was attempted to be given or secured, the contract was void.

2. An option in a contract for the sale and delivery of a given amount of coal at prices fixed, which gives the purchaser the right to take such other coal as he might need in his business as a coal merchant, at a certain specified advance of the prices fixed therein, during the season, is in violation of section 130 of the Criminal Code, and void.

3. SAME—*part legal, part illegal—severance.* Where the immediate object of an agreement is unlawful, the contract will be void. But when there are contained in the same instrument distinct engagements, by which a party binds himself to do certain acts, some of which are legal and some illegal, the performance of those which are legal may be enforced, though the performance of those which are illegal can not be.

4. Where the legal and the illegal parts of a contract are not capable of severance, the whole is void; but when the illegality is created by either the statute or the common law, the bad part may be rejected and the legal parts retained and enforced. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will generally be held to be severable. The same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire.

5. Where a party sets up the illegality of his contract, as, giving an option for the sale and purchase of coal, and thus avoids damages for his breach of the same, he can not be allowed to recover the contract price of such of the coal as he may have delivered under the contract.

6. Instruction—*recitals not supported by the record.* An instruction which states that the amount of the plaintiff's damages for breach of a contract is admitted, thereby limiting plaintiff's right of recovery, is erroneous when the record otherwise does not show such admission. The exception of the plaintiff to such an instruction is sufficient to entitle him to have the same reviewed. By failing to formally object at the time he will not be held as admitting the truth of the statement in the instruction.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. John P. Altgeld, Judge, presiding.

Mr. Robert Rae, and Mr. Richard Prendergast, for the appellant:

The contract for the purchase of coal was an entire contract. The undertaking to furnish coal at appellee's dock was dependent upon the fact appellant should agree to take 12,000 tons at his dock. When the failure as to a part would materially defeat the object of the contract, and would have affected the sale had such failure been anticipated, the contract will be entire. Story on Contracts, sec. 24.

A contract illegal in part and legal as to the residue is void as to all, when the parts can not be separated. But one entire consideration can not, within this rule, be separated, though composed of distinct items, some of which are legal and others illegal. Bishop on Contracts, sec. 487; *Bernard* v. *Backhaus,* 52 Wis. 563; *In re Green,* 7 Biss. 338; *Dillon* v. *Allen,* 46 Iowa, 600; *Cassidy* v. *Woodbury,* 13 id. 116; *Waite* v. *Jones,* 1 Bing. 656; 1 Smith's Lead. Cas. 364; *Carleton* v. *Whitcher,* 5 N. H. 196; *Pettett* v. *Pettett,* 32 Ala. 288; *Collins* v. *Merrell,* 2 Metc. 163; *Kimbrough* v. *Lam,* 11 Bush, 556; *Chandler* v. *Johnson,* 39 Ga. 85; *Filson's Trustees* v. *Himes,* 5 Pa. St. 452; *Bixby* v. *Moore,* 51 N. H. 402; *Bank* v. *King,* 44 N. Y. 87; *Foley* v. *Spier,* 100 id. 552; *Perkins* v. *Cummings,* 2 Gray, 258; *Woodruff* v. *Hinman,* 11 Vt. 592; *Snider* v. *Willey,* 33 Mich. 483; *Covington* v. *Threadgill,* 88 N. C. 186;

*Railroad Co.* v. *Tabor,* 6 Col. 1; *McQuad* v. *Rosecrans,* 36 Ohio St. 442; *James* v. *Jelleson,* 94 Ind. 292.

In determining the nature and effect of a contract, and what is the consideration therefor, the court must ascertain what affected the minds of the promisor to induce the promise. The inducing cause is the consideration. Anson on Contracts, 182; Pollack on Contracts, 321.

If part of the consideration in a contract is illegal, the entire contract is affected thereby and rendered void. *Carleton* v. *Whitcher,* 5 N. H. 196; *Collins* v. *Merrell,* 2 Metc. 163; *Pettett* v. *Pettett,* 32 Ala. 288; *Kennett* v. *Chambers,* 14 How. 38; *Rose* v. *Truax,* 21 Barb. 361; *Filson's Trustees* v. *Himes,* 5 Pa. St. 452; *Snider* v. *Willey,* 33 Mich. 483; *Deering* v. *Chapman,* 22 Me. 488; *Averbeck* v. *Hall,* 14 Bush, 505; *Lindsay* v. *Smith,* 78 N. C. 328; *Hinds* v. *Chamberlain,* 6 N. H. 225; *Railroad Co.* v. *Fuel Co.* 31 Fed. Rep. 652; 2 Chitty on Contracts, (11th ed.) 963; *Yale* v. *Rex,* 6 Bro. P. C. 27; *Kingsbrough* v. *Lane,* 11 Bush, 556; *Bank* v. *King,* 44 N. Y. 87; *Chandler* v. *Johnson,* 39 Ga. 85; *Braitch* v. *Guelick,* 37 Iowa, 312; *Bixby* v. *Moore,* 51 N. H. 402; *Tenney* v. *Foote,* 95 Ill. 99; *McBratney* v. *Chandler,* 22 Kan. 692; *Barton* v. *Port Jackson,* 17 Barb. 397; 1 Parsons on Contracts, 380; *Hinesberg* v. *Sumner,* 9 Vern. 23; *Woodruf* v. *Hinman,* 11 id. 592; *Tilson* v. *Himes,* 5 Barr, 452.

The plaintiff can not abandon an illegal contract and recover on a *quantum meruit* or *valebant.* *Sullivan* v. *Hargen,* 28 R. I. 232; *Jackson* v. *McLean,* 100 Mo. 130; *Garfield* v. *Blair,* 10 N. Y. 340; *Shipley* v. *Reasmer,* 71 Mich. 209; *Pike* v. *King,* 16 Iowa, 49; *Tower* v. *Decker,* 51 Wis. 46; *Myers* v. *Monmouth,* 101 Mass. 366.

Whenever the consideration on either side is unlawful,—that is, whether that which is the ground of the promise on one part or the other, which is promised to be done on the other part, is unlawful,—all is void, and neither party can derive any assistance from a court of law or of equity to carry

it into effect.   *Horton* v. *Buffington,* 105 Mass. 399 ; *Myers* v. *Meinrath,* 101 id. 441 ; *Block* v. *McMurry,* 56 id. 217 ; *Hall* v. *Corcoran,* 107 id. 215 ; *Pallese* v. *Clark,* 114 id. 80 ; *Arms case,* 103 U. S. 261 ; *Higgins* v. *McCrea,* 116 id. 671 ; *Shuman* v. *Shuman,* 27 Pa. St. 90 ; *Chestnut* v. *Harber,* 78 id. 473 ; *Moore* v. *Murdock,* 26 Cal. 514 ; *Green* v. *Godfry,* 44 Me. 25 ; *Smith* v. *Bean,* 15 N. H. 579 ; *Thomas* v. *Williams,* 58 id. 243 ; *Ellis* v. *Hammond,* 56 Ga. 179 ; *Kinney* v. *McDurmit,* 55 Iowa, 674 ; Story on Agency, secs. 20, 235 ; *Troelbert* v. *Decker,* 51 Wis. 46 ; *Wolcott* v. *Heath,* 78 Ill. 433.

Messrs. PRUSSING, HUTCHINS & GOODRICH, for the appellee :

We contend that there were two distinct contracts based on two distinct and separate considerations : First, to sell 12,000 tons of coal at a certain definite price per ton ; and second, to give an option for an unspecified quantity of coal at the price of fifty cents per ton more.   *Osgood* v. *Bander,* 75 Iowa, 550.

Mr. JUSTICE WILKIN delivered the opinion of the Court :

This is an appeal from a judgment of affirmance in the Appellate Court for the First District.   The case was taken to that court by appellant from a judgment in favor of appellee, against him, for $13,736.34 and costs of suit, rendered by the Superior Court of Cook county.   The record shows that each of said parties had suits pending against the other in said Superior Court, growing out of the same transaction, which, by agreement of the parties, were to have been tried together. A final trial was however had, and judgment rendered in the case wherein the appellant was plaintiff and appellee defendant, without reference to the other suit.   The declaration counted on a breach of contract, alleging, in substance, that on the 28th day of July, 1886, plaintiff sent to the defendant the following letter :

"Chicago, *July 28, 1886.*

*"Lehigh and Franklin Coal Co., 97 Randolph St., City:*

"Gentlemen—Name me prices and terms on ·4500 tons stove, 2000 tons egg, 2500 tons chestnut, delivered alongside my dock. Name price also on 3000 tons grate, delivered at my dock F. O. B. cars, Chicago, or to my teams from your dock."

The defendant replied:

*"John J. Corcoran, Chicago:*    "Chicago, *July 31, 1886.*

"Dear Sir—Replying to your inquiry for prices on coal, we beg to name you as follows: 3000 tons of grate at $4.15 per ton of 2000 pounds, alongside; 2000 tons small egg at $4.15 per ton of 2000 pounds, alongside; 4500 tons of stove at $4.40 per ton of 2000 pounds, alongside; 2500 tons of chestnut at $4.40 per ton of 2000 pounds, alongside.

"*Terms*—We will take your paper at three months, with six per cent interest, and will renew the same as it becomes due, to accommodate you, but you are to pay the same as fast as you can. In-view of the fact that this purchase would amount to over $50,000, we must ask you to give us a guarantee, and we will not accept the order unless the guarantee is satisfactory. Should you prefer to pay cash, we will allow you one and one-half per cent discount from the above prices. You are to pay the freights, as is customary. Should you require any coal on our dock, will name you fifty cents per ton in advance of above prices during the season, provided you pur-chase the above order from us."

On the 20th of August following, the defendant accepted the offer therein made.

The declaration is very voluminous, containing numerous special counts, some of which allege a failure on the part of the defendant to deliver at plaintiff's dock the 12,000 tons of coal as per agreement, and others alleging a refusal to furnish coal at its own dock as plaintiff had required, the latter counts· being based on the clause of said offer which reads: "Should·

you require coal on our dock, will name you fifty cents per ton in advance of above prices during the season, provided you purchase the above order from us." The damages were laid at $25,000. The defendant filed a plea of non assumpsit, and also of set-off for goods and chattels sold and delivered, money found due on settlement, etc., laying the damages in the latter plea at $25,000.

On the trial the presiding judge gave the jury a series of instructions prepared by himself, and refused all those asked by counsel for either party. The first of those given was as follows:

"In this case it is admitted that the defendants failed to deliver 4279 tons of the 12,000 tons named in the contract, and that the plaintiff's damages were one dollar per ton, making $4279, which you will allow, besides six per cent interest per annum from November 30, 1886, as damages for failure on the part of the defendant to deliver all of the 12,000 tons above named, making $5134.70."

The second was as follows:

"In regard to any coal over and above the 12,000 tons above named, you are instructed that under the contract read in evidence the defendant was bound to furnish the plaintiff, off of its dock, such additional coal as he might require in his business up to April 30, 1887, over and above the 12,000 tons named, at a price of fifty cents in advance of the price named in the contract, this fifty cents being the cost of handling and loss at the dock. In order to entitle the plaintiff to call for coal under this provision of the contract it is necessary that he should require it in his business over and above the 12,000 tons named."

And the eleventh was as follows:

"In making up your verdict you will first set down the sum admitted to be due from the plaintiff to the defendant for coal actually delivered, then determine from the evidence, under these instructions, what the plaintiff's damages are, then de-

duct the less sum from the greater, and return a verdict for the balance in favor of the party to whom such balance is coming. If you find, from all the evidence, that 12,000 tons was all the coal that the plaintiff needed in his business, as heretofore explained, then you can allow the plaintiff no damages over and above that admitted for failure to deliver the whole 12,000 tons."

The verdict was as follows: "We, the jury, find the amount due from the plaintiff to the defendant, for coal delivered, to be $18,871.04, and we find the plaintiff's damages to be $5134.75. We therefore find for the defendant the sum of $13,736.34." The judgment appealed from was entered on this verdict. The jury was also instructed, that if they believed, from the evidence, that plaintiff required coal over and above the 12,000 tons, and called upon appellee for the same, to be delivered to him at its dock, and defendant failed to furnish it, they should allow him one dollar per ton for all coal which they should find, from the evidence, he so required.

Manifestly, the jury, following the first instruction, took $18,871.04 as "the sum admitted to be due from the plaintiff to the defendant for coal actually delivered;" that they then accepted the amount given them by the court, $5134.70, as the whole amount of damages sustained by the plaintiff "for a failure on the part of defendant to deliver all of the 12,000 tons," and arrived at their verdict by deducting the latter sum from the former, allowing no damages whatever under the last mentioned instruction. The principal controversy on the trial was on that branch of the case,—not as to the plaintiff's legal right to such damages under the contract, but whether or not, as a matter of fact, the defendant had failed to furnish him coal as required, and whether he was damaged thereby. On these questions there was an irreconcilable conflict in the evidence. Appellee, however, now contends that the clause in the contract on which that claim to damages is based is a mere option, void under section 130, chapter 38, of the Revised Stat-

utes, and the Appellate Court so held, declining to consider the evidence on that branch of the case. Counsel for appellant acquiesce in the view that said clause is void, but insist that it must be taken together with the contract for 12,000 tons of coal, thereby rendering it void also; therefore they say, while appellant could recover no damages for the failure to furnish him coal at appellee's dock, neither can appellee recover the price fixed by that contract for coal actually delivered.

This position can not be maintained. "When the immediate object of an agreement is unlawful, the agreement is void, when there are contained in the same instrument distinct engagements, by which a party binds himself to do certain acts, some of which are legal and some illegal at common law, the performance of those which are legal may be enforced though the performance of those which are illegal can not." (3 Am. and Eng. Ency. of Law, 886.) "When you can not sever the illegal from the legal part of a covenant the contract is altogether void; but when you can sever them, whether the illegal be created by statute or common law, you may reject the bad part and retain the good." Ibid. note 1, and cases cited.

On the subject of entire and severable contracts it is said by Parsons in his work on Contracts, (vol. 2, 517): "If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. And the same rule holds when the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the latter is in its nature single and entire." *Osgood* v. *Bander*, 75 Iowa, 550.

Parsons on Contracts, speaking of illegal consideration (vol. 1, p. 457, 6th ed.) says: "A distinction must be taken between the cases in which the consideration is illegal in part, and

those in which the promise founded on the consideration is illegal in part. If any part of a consideration is illegal the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal. But if one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they can not be separated, in which case the whole promise is void." Here, the agreement between the parties for the sale and purchase of the 12,000 tons of coal, to be delivered at appellant's dock, is in consideration of his agreement to pay the price named therefor. No part of the consideration for that agreement could arise out of a promise by him to take other coal from the dock of appellee, for he made no such promise. Conceding that the offer to allow him to take coal from appellee's dock was in consideration that he agreed to purchase the 12,000 tons, the reverse of the proposition can not be true, because he assumed no liability whatever as to the coal to be taken from the dock of appellee. When the offer made by appellee was accepted, there was a complete contract between the parties for the sale and purchase of 12,000 tons of coal, independent of the option clause. Either party could require the other to comply with its terms or respond in damages for its breach, without reference to the option given in the concluding sentence.

We entertain no doubt as to the validity of the agreement between these parties for the purchase and sale of the 12,000 tons of coal. We think it equally clear, that so far as there was an attempt to contract for coal to be delivered to plaintiff below from the dock of the defendant, as plaintiff should require it, the agreement was void under our statute. On this theory, was the judgment below correct? We think not.

Clearly, appellee can not be allowed to escape liability under the option clause of its contract, when called upon to respond in damages for its breach, by saying that contract is illegal and void, and at the same time recover under it the price of coal furnished. And yet that would be the effect of an affirmance of the judgment of the Superior Court. Of the $18,871.04 found by the jury to be due appellee, $3061.16 was evidenced by book account, most, if not all, of which was for coal furnished at appellee's dock, and charged for at the price fixed by the illegal contract. The jury, under the instructions of the court, could but treat the option clause as a binding contract between the parties, and therefore allowed appellee the price named in it for coal delivered. It allowed appellant no damages for a failure to deliver coal at its dock, because the evidence failed, as it found, to establish any such damages. The judgment of the Appellate Court leaves appellee to enjoy the fruits of the verdict and judgment in its favor, but denies appellant the right to have the evidence reviewed on the question as to whether or not he sustained damages by a failure to deliver to him coal as required. In this we think there was manifest error.

The first instruction given to the jury was not authorized by the facts as they appear in the record, in so far as it states that it was admitted "that the plaintiff's damages were one dollar per ton." It took away from the jury entirely all question as to the amount of the plaintiff's damages under the 12,000 ton clause of the contract, and was therefore most material to his right of recovery. There is nothing whatever in the record, except the statement in the instruction itself, tending to show that it was admitted that his damages were only one dollar per ton. This, appellee does not deny, but it is insisted that appellant's failure to object to the statement by the court at the time it was made amounts to an implied admission on his part that it was true. If there was anything in the record tending to show that attention was directed to it at that time,

the position would doubtless be correct, but there is not. The statement was not of an independent fact, but in the form of an instruction, which was duly excepted to, and we are unable to perceive why appellant should be concluded by his failure to object to a particular statement of fact therein contained at the time the instruction was read. Suppose the objection to the instruction had been that it assumed facts not proved, or that there was no evidence in the record upon which to base it. Could it be said the objection was waived, or that a failure to object at the time the instruction was given amounted to an admission that the assumption was correct, or that there was such evidence in the record? While there is much force in the suggestion that a court would not be likely to make such a statement if it were not true, yet we know of no authority justifying us in accepting a material fact as established by the record when there is nothing therein contained to show it. Moreover, the evidence in this case, as well as instructions asked by both parties on the measure of damages for a failure to deliver the coal, strongly indicate that no agreement of the kind stated in the instruction was made, and justify the inference that that part of the instruction was given through inadvertence. However that may be, it must be held, in the light of this record, that it was unauthorized and erroneous.

The point is made that the court below erred in entering judgment for the defendant on its plea of set-off. We think the objection is without force.

For the errors indicated, the judgment of the Appellate and Superior Courts will be reversed, and the cause will be remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*