HARBER BROTHERS COMPANY

*v.*

THE MOFFAT CYCLE COMPANY.

*Filed at Springfield, June 16, 1894.*

1. CONTRACT—*action by party in default.* A party who has failed to comply with his contract as to payment of machines actually received, accepted and disposed of by him, with full knowledge of a breach by

.the vendor, as to the time of delivery and number delivered, can not maintain an action thereon to recover damages for the failure of the defendant to fully perform his part of the contract.

2. SAME—*whether entire or severable.* A contract by which the defendant agreed to deliver to the plaintiff on the cars at Chicago 300 Safety bicycles—the shipments to commence in January then next, and to be made thereafter in quantities and times as plaintiff should specify, and paid for by his acceptances at thirty days, though one contract, embraced independent obligations of the parties as to delivery on the one part, and payment on the other.

3. The principal difference between such a contract and an entire contract is, that either party to one of the former kind, having fully performed as to any independent agreement, may maintain an action thereon for its breach by the other, without averring or proving performance, or its equivalent, on his part as to all, but subject to the defendant's right to *recoup* for his failure as to others, in respect of which he is himself not in default.

4. On general principles, either party to a contract, whether entire or several, may recover, as on an implied agreement, for a partial performance, which has been voluntarily accepted by the other, with full knowledge of the breach; but subject also to the right of the latter to *recoup* for the failure to fully perform the express contract.

5. SAME—*party suing on—must show he is not in default of performance.* A party to a contract, seeking damages for its non-performance by the other party, must allege and prove that he, the plaintiff, has himself complied with all the conditions of the contract required of him to be performed, and that the defendant is in default. If both parties are alike in default, neither can maintain an action on the contract for its breach by the other.

6. A vendee who has accepted goods delivered under an express contract, but not at the time, or in the quantity required by it, with knowledge of the default of the vendor in these respects, who has himself failed without legal excuse to pay for them according to the contract, can not maintain an action on the contract for such default of the vendor.

7. SET-OFF—*when allowed.* Set-off is a counter-claim, as to which the defendant is plaintiff, and he must establish his right as upon a distinct action; and, therefore, in case of a breach of the contract, he must show that he, himself, is not in default as to the agreement, whether entire or severable, on which he bases his claim.

8. RECOUPMENT—*the nature and proof of.* Although *recoupment,* considered as a right, enables a delinquent defendant conceding to the plaintiff a right of action to prevent a recovery or reduce its amount,

it is not upon any merit of his own, but for the fault of the plaintiff, in connection with the same transaction on which he sues. The burden of proving such fault rests upon him, and is the same that it would be if he were plaintiff suing for the damages caused by it; and if that fault consists in the breach of another agreement, independent of the one in which the plaintiff sues, but contained in the same instrument, and relating to the same subject matter, he must show, in like manner, that he is not, himself, in default as to that agreement.

Appeal from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of McLean County; the Hon. Thomas F. Tipton, Judge, presiding.

Messrs. Lillard & Williams, for the appellant:

If we understand the law, a purchaser of goods delayed so long after the contract time for delivery, as by such delay to work a damage to the purchaser, has two options.

1.    He may rescind, and refuse to accept the goods, because of the vendor's delay and default. *Lowber* v. *Bangs,* 2 Wall. (U. S.) 728; *Fairbanks* v. *Owen,* 46 Ill. App. 80.

2.    Or, he may receive the goods, and *recoup* the damages occasioned by delay against the purchase price, *i. e.,* he may sue for the damages, and the vendee may *recoup* or set-off the purchase price against the damages. *Hill* v. *Chipman,* 59 Wis. 214; *Elliott* v. *Eppenhain,* id. 272; *Whalon* v. *Aldrich,* 8 Minn. 346; *Fairbanks* v. *Owen,* 46 Ill. App. 80; *Ramsey* v. *Tulley,* 12 id. 463; *Myers* v. *Gross,* 59 Ill. 436; *Downey* v. *O'Donnell,* 86 id. 49.

But the vendor who is himself *first in default* can not declare the vendee in default; nor rescind by reason of a subsequent default by the vendee. And, after the vendor *is first in default,* the vendee may refuse to pay, without forfeiting his right to have his contract fully executed. *Myers* v. *Gross,* 59 Ill. 436; *Downey* v. *O'Donnell,* 86 id. 49; *Evans* v. *C. & R. I. R. R. Co.,* 26 id. 189.

This court has decided these propositions in a case on all fours with the case at bar. *Corcoran* v. *Lehigh Coal Co.,* 138 Ill. 390.

This case is governed by a line of decisions, holding that where the vendor has not delivered all the goods contracted for and the vendee has not paid for all goods he has received, the damages of vendee and balance of purchase price due the vendor will be set off or *recouped*, and a judgment rendered for vendor or vendee for the balance due the one or the other, as the case may be. Of which line of decisions, exactly applicable to this case, the following are selections, viz.: *Richards* v. *Shaw*, 67 Ill. 222–225; *Corcoran* v. *Lehigh Coal Co.*, 138 id. 390–400; *Evans* v. *C. & R. I. R. R. Co.*, 26 id. 189; *Ludesco Oil Co.* v. *Brewer*, 66 Pa. St. 351; *Scott* v. *Coal Co.*, 89 id. 231; *Bowker* v. *Hoyt*, 18 Pick. (Mass.) 555; *Booth* v. *Tyson*, 15 Vt. 515; *Cole* v. *Swanston*, 1 Cal. 53; *Stevens* v. *Beard*, 14 Wend. (N. Y.) 256; *Ives* v. *Van Epp*, 22 id. 154; *Tipton* v. *Feitner*, 20 N. Y. 423; *Perlee* v. *Bebee*, 13 Hun, (N. Y.) 89; 2 Sutherland on Damages, 356 and notes, and top p. 358.

Sutherland's text says: "The vendor is entitled to recover the contract price for the goods delivered, subject to *recoupment* of such *damages* as vendee sustains for non-performance of the entire contract." * * * "The vendee has the right to damages for the other party's failure to perform in full." 2 Sutherland, 356, 357, 358.

Mr. A. E. DeMange, for the appellee:

A vendor has a right to rescind upon the vendee's refusal to comply with the terms of the contract, save on a new condition. *Gilbert* v. *McGinnis*, 114 Ill. 30.

To entitle one to recover damages for non-performance of a contract, he must show performance of all conditions precedent or concurrent required of him by the contract.

If he is in default of payment, and his default has not been waived, he can not recover for loss of profits he might have made had the contract been fully performed. *Pa.*

*Coal Co.* v. *Ryan*, 107 Ill. 226; *Stewart* v. *Many*, 7 Ill. App. 515, 516.

The mere fact that the seller indulges the buyer by sending him goods, when the buyer is in default in his payments, does not amount to a waiver of the conditions of payment fixed in the contract.   *Pa. Coal Co.* v. *Ryan*, 107 Ill. 226.

While the buyer is in default, he has no legal right to ask that goods shall be shipped to him, or to ask for damages because they are not shipped.   *Pa. Coal Co.* v. *Ryan*, 107 Ill. 234; *Stewart* v. *Many*, 7 Ill. App. 515, 516.

"It would be singularly inequitable to hold appellee bound to ship machines to appellant while it was so refusing or neglecting to pay for those already shipped in accordance with the agreement."   *Stewart* v. *Many*, 7 Ill. App. 517; *Withers* v. *Reynolds*, 2d Barn. & Adol., 882; *Curtis* v. *Gibney*, 49 Md. 131.

PER CURIAM:

This was a suit in assumpsit, brought by the Harber Brothers Company against the Moffat Cycle Company, to recover damages for breaches of a contract for the sale and delivery of personal property.   The defendant pleaded non-assumpsit and set-off, and on trial before the court, without a jury, the issues were found for the defendant, and its damages under its plea of set-off were assessed at $1,059.26, and for that sum and costs the defendant had judgment.   On appeal to the Appellate Court the judgment was affirmed, and by a further appeal the judgment is now brought to this court.   In deciding the case, the Appellate Court delivered the following opinion:

"PLEASANTS, J.:

"In this case the facts are substantially agreed on, and the question on the record is single, and purely one of law.

"Appellee was an Illinois corporation, engaged in the manufacture of bicycles at Chicago, and appellant, also an

Illinois corporation engaged in selling bicycles and other machines at Bloomington.

"On December 8, 1891, the parties entered into a written contract, of which it is unnecessary to say more than that by it appellee agreed, among other things, to deliver to appellant on the cars at Chicago 300 Moffatt Safety bicycles, of 1892 pattern—shipments to commence in January then next, and made thereafter in quantities and at times as appellant should specify, and paid for by his acceptances at thirty days.

"Appellant ordered one machine the day before the contract was made, and on the 31st of the same month, 24; from time to time, in February, 1892, 46; in March, 113; in April, 67, and in May, 19—in all, 270. Most of these orders were for single machines, to be shipped to different points directly to parties respectively to whom appellant had made sales; some for two or three, and the few for large numbers, to appellant at Bloomington.

"In partial compliance with these orders, appellee shipped in February, 2; in March, 9; in April, 19; in May, 56; in June, 16, and in July, 3—in all, 105.

"The evidence showed, and it was admitted, that appellant did not give its acceptance for all of those shipped, but from the time the first was received until this suit was brought, was constantly in arrears for more or less of them. This arrearage was purposely and persistently withheld, on the ground that appellee was first in default, and that the damage to appellant, by reason of the delays and shortness of shipments, always exceeded it. The correspondence between the parties, which is in the record, consists largely of mutual complaints for disregard of their contract obligations. Appellant was insisting on prompt and full compliance with its orders; and appellee, claiming it was doing all it could, and increasing its facilities for doing more than before in that direction, and insisting on prompt and full acceptances for what were

shipped.   Neither justified or attempted to excuse its own delinquency on the ground of the other's until as hereinafter stated.   As early as March 15th, appellant wrote to appellee that they were receiving countermands from their customers, because of the failure to ship machines to them as ordered, and saying: 'Machines we must have or sustain a loss, and you know what that means.'   But the first notice taken of appellee's complaint of neglect to send acceptances that we find in the correspondence abstracted, is in appellant's letter of April 19th, in answer to appellee's of the 12th, enclosing draft, dated March 29th, for acceptance to cover shipments up to that date, for $675.04, in which it says: 'You can hardly expect us to take up the matter of your account and make settlement of it in the condition that things are now.   We want some very satisfactory proof that you can take care of us during and at the close of the season if we do so.'

"To this letter appellee replied on the 21st, admitting that it had not been able to perform as promised in regard to shipments, but expressing surprise, for reasons stated, at the position taken by appellant, and saying: 'We must insist that you let us have your acceptance by return post, and we in turn will do our best towards filling your orders.'

"On the 26th, appellant, reviewing the course of their dealings, wrote: 'Now, if you expect us to sign acceptances promptly, then you must expect to do something for us. If you do not show a disposition immediately to give us goods, and in large quantities, this letter is but a forerunner of what you will receive.'   To which appellee replied on the 27th: 'I am in receipt of your favor of the 26th, which covers a good deal of ground that we have already gone over, and which convinces me further of the issue your company is leading up to.   We shall hold further shipments until we receive an acceptance or cash for all the wheels we have shipped you up to date.'

"Notwithstanding further acceptances, but not in full, and further orders, filled only in part and with delay, these mutual complaints and demands continued until July 18th, when appellee, by letter of that date, among other things, notified appellant, that unless payment should be made for the goods shipped and not paid for, and the other matters of difference arranged within five days, it would terminate appellant's agency for the sale of its wheels in the territory referred to, and fill orders from such territory itself. On the 23d, appellant, in reply to one from appellee on the 21st, not abstracted, wrote, among other things: ' * * * We do not intend to pay you another cent until there is an adjustment of our claim for damages;' and on the 27th brought this suit.

"It was in assumpsit, on four special counts upon the contract, with the common counts added. The cause of action set forth in each of the special counts was defendant's breach of the written contract by unreasonable delay in the shipment of the 105 bicycles shipped, and failure to ship the other 165 ordered. The third and fourth, added by leave of the court, alleged special damages, by reason of defendant's alleged knowledge that plaintiff bought to resell, and that its profits would be $50 upon each machine resold, and that plaintiff had incurred and would incur a large expense in preparing to resell and in reselling.

"Defendant pleaded the general issue, and set-off in the common counts, and two other pleas, setting off damages by failure of defendant to give acceptances, to which demurrers were sustained. But it was afterwards stipulated 'that all evidence that would be competent under any issue well pleaded should be considered as though the declaration or pleas or replications were filed, making such issues or averments.'

"The cause was tried by the court without a jury. Appellant admitted that it had withheld acceptances and was in arrears for the 105 wheels actually shipped and received, to

the amount of $1,647.96, as a partial indemnity against the damages it claimed to have suffered, but showed in reduction of this sum an account of $588.70 for repairs of defects in them. The court allowed this account, and rendered judgment for the defendant for the difference, $1,059.26, disallowing plaintiff's claim for damages. Exceptions were duly taken by plaintiff to this judgment, and from it this appeal is prosecuted.

"The question then is, could appellant, having failed to comply with its contract as to payment for machines actually received, accepted and disposed of by it, with full knowledge of the breach by appellee as to time of delivery and number delivered, maintain an action, on the contract, for such breach.

"We have no doubt that this contract, though one, was severable, embracing independent obligations of the parties as to delivery on the one part and payment on the other, under the several orders for machines given by appellant— the principal difference between which and an entire contract is, that either party to one of the former kind, having fully performed as to any independent agreement, may maintain an action thereon for its breach by the other without averring or proving performance, or its equivalent, on his part as to all; but subject to defendant's right to *recoup* for his failure as to others, in respect of which he is himself not in default.

"And on general principles either party to a contract, whether entire or severable, may recover as on an implied agreement for a partial performance which has been voluntarily accepted by the other with full knowledge of the breach; but subject also to the latter's right to *recoup* for the failure to fully perform the express contract.

"Appellant here is not seeking damages as on an implied agreement, nor by way of recoupment, but by action on the express contract; and we understand it to be an elementary and inflexible rule in such case, that it must aver and prove

it is not itself in default as to the agreement for the breach of which by appellee it brings the suit.

"The proposition for which it contends, as stated in the argument, is, 'that where the vendor has not delivered all the goods contracted for, and the vendee has not paid for all he has received, the damages of vendee and purchase price due the vendor will be set off or recouped, and a judgment rendered for vendor or vendee for the balance due the one or the other, as the case may be.'

"For application here, this statement seems to concede what the evidence also seems to prove—that neither party had complied, literally or substantially, with the terms of its agreement. As to the machines delayed, that of defendant was that they should not be delayed, and that of plaintiff, that for all it accepted, though delayed, it would pay in the manner prescribed, as if they had not been delayed. At and from the very beginning of their dealings these agreements were violated by each respectively, and by the plaintiff willfully. For the machines ordered but not delivered, as well as for those delivered and accepted but not paid for, it finally declared its intention, deliberately, in writing, not to pay one cent, except upon a precedent condition not imposed by the agreement, the performance of which it had the power to delay, if not practically to prevent.

"We think these facts disprove the averment in the declaration of plaintiff's readiness to receive and pay for the goods according to the agreement.

"The parties then being alike in default, how can either maintain an action, upon the contract, for its breach by the other? What hinders the application of the rule in such case that *potior est conditio defendentis?*

"It is said the proposition contended for is supported by a line of decisions of which thirteen are cited as examples. Seven are stated generally or quoted from, and are, therefore, presumably the strongest in appellant's favor. An

examination of these and several of the others fails to discover that either of them goes farther than is above stated, as familiar law relating to entire and severable contracts, the right of recovery for partial performance and of diminution or extinguishment of plaintiff's claim, by recoupment. Neither seems to touch the pivotal point in this case, namely, the right of a party to recover, as plaintiff, for the breach of an agreement, entire or independent, which he has himself, without legal excuse, failed to perform substantially in full.

"The one most confidently relied on, as containing every element of the case at bar, and the only one in which, as here, the vendee was plaintiff, is that of *Corcoran* v. *The Lehigh Coal Co.*, 138 Ill. 390. In that case the agreement, made August 20, 1886, was that the company would deliver to him, at his dock, 12,000 tons of coal—grate, small egg, stove and chestnut—at stated prices per ton for each kind, and an additional amount, at his option, and its own dock, on other terms also stated. No time was fixed for delivery, but since plaintiff was a coal dealer, presumably it was intended to be from time to time as he should order to meet the demands of his trade. The terms for the 12,000 tons were: 'We will take your paper at three months, with six *per cent* interest, and will renew the same when it becomes due, to accommodate you, but you are to pay the same as fast as you can.' He was also to give a satisfactory guarantee.

"When delivery was first made, or first refused, or when the suit was commenced, does not appear. Nor, in view of the total price, what it had paid, the credit given and privilege of removal, do we think it certainly appears that plaintiff was ever in default as to the agreement on his part; though from the finding of a balance against him, on defendants' plea of set-off, which was not only for goods sold and delivered, but also for money found due on settlement—it may be inferred that he had either failed to give

his paper for the coal received, or had failed to pay it at maturity before he brought the suit. If he gave it according to the agreement, the failure to pay it would not be a breach of the agreement.

"But whichever may be the facts, the question here involved was not presented by counsel nor considered by the court. There is no allusion to any such question in the opinion. It seems to have been assumed and conceded that plaintiff was in condition to recover upon the contract if defendant had broken it. He claimed damages for a failure to deliver according to the agreement for 12,000 tons and also according to the option clause. The Supreme Court say the principal controversy on the trial was as to the latter—'not as to his legal right to such damages under the contract, but whether or not, as a matter of fact, the defendant had failed to furnish him coal as required, and whether he was damaged thereby.' The trial Judge refused all the instructions asked and gave a series prepared by himself.

"Of these, the first told the jury it was admitted that defendant failed to furnish 4,279 of the 12,000 tons, and that plaintiff's damages were one dollar *per ton*, which they should allow him, with interest at six per cent from November 30, 1886—making $5,134.70, under the agreement. The second related to the claim for the damages under the option clause. It appeared that the jury allowed him the amount stated by the judge, but nothing under the option clause, and found a balance for defendant for coal delivered, which included a large amount for delivery, at the higher prices fixed by that clause. The Appellate Court held the option clause illegal and void, and refused to consider the evidence on that branch of the case, but affirmed the judgment. In the Supreme Court, according to the opinion, the appellee (defendant) contended it was void, and the court say, 'counsel for appellant acquiesced in the view that said clause is void, but insist that it must be taken .

together with the contract for 12,000 tons of coal, thereby rendering it void also; therefore they say, while appellant could recover no damages for the failure to furnish him coal at appellee's dock, neither can appellee recover the price fixed by that contract for coal actually delivered. That position can not be maintained.' The court then proceed to show that the option clause could not have formed any part of the consideration for the agreement as to the 12,000 tons, and, therefore, though illegal, could not have affected the validity of that agreement; and that upon that theory the judgment was not correct. They hold that appellee could not escape liability under that clause, upon the ground of its illegality, and at the same time under it recover, as by the judgment he did, the price of the coal furnished; and further, find that there was nothing whatever in the record to warrant the assumption, in the first instruction, of an admission that plaintiff's damage for the failure to deliver under the 12,000 ton contract was one dollar per ton. For those reasons, and those only, so far as appears, they reversed the judgment. In the report of the case we do not find a word indicating that counsel on either side, or the court, supposed that the question here presented was involved. It was not decided, expressly or by implication.

"The question here distinctly presented as the controlling one, is whether a vendee who has accepted goods delivered under an express contract, but not at the time or in the quantity required by it, with knowledge of the default of the vendor in those respects, but has himself failed, without legal excuse, to pay for them according to it, can maintain an action on the contract for such a default of the vendor. We think the general rule, everywhere recognized, is against it, and has been specifically so applied in analogous cases in Illinois. *Pennsylvania Coal Co.* v. *Ryan,* 107 Ill. 226; *Bradley* v. *King,* 44 id. 339; *Stewart* v. *Many,* 7 Ill. App. 517.

"For appellant the attempt is made to evade the force of these decisions, by the claim that appellee was first in default, whereby appellant was damaged to an amount exceeding the price of the goods received, for which he failed to pay, and from that time, until the suit was brought, always had a just claim for damages by appellee's default exceeding the amount for which appellant was in arrears for machines delivered to and accepted by it. In other words, the price of the machines accepted and damages for delay in the delivery of them and for the non-delivery of others considered, appellant being judge, it never really did owe anything for what it accepted more than it paid for when due and in the manner prescribed by the agreements, and, therefore, was not bound to give the acceptances it withheld. But the question is not whether upon a fair settlement, offsetting damages against price, appellant really owed anything, but whether, accepting the machines under contract, it performed that contract on its part as to payment.

"A like attempt under the circumstances was made in the case of *Bradley* v. *King, supra.* There, by contract made in February, the vendor agreed to deliver a million feet of lumber by the 1st of September then next. By that time there was delivered only about 218,000 feet. By the 29th nearly 600,000 feet more was delivered, the last cargo— about 175,000 feet—being delivered on or near that day. The vendee accepted it, but refused to pay for it, and brought the suit for damages for failure to deliver according to the terms of the contract. Defendant pleaded the refusal to pay for the last cargo, and on demurrer the plea was held good. The court held that though delayed, its acceptance bound the vendee to pay for it as if it had been delivered within the required time, and the refusal excused further delivery; and say that 'if plaintiffs sought, at the time of the delivery of the last cargo, to pay for it by set-

7—151 ILL.

ting off their damages, it was incumbent on them to have made a distinct offer so to do to the defendants. In order to defeat the effect of this plea, they should either have traversed the averment of refusal to pay, and proved, on the trial of the issue, that damages were due them equal to the value of the cargo, and that they offered to the defendants to release the damages to that amount, or they might have replied these facts specially to the plea. But the plea, on demurrer, should have been held good.'

"Such an offer, if the damages proved were equal to the value of the cargo, would have been equivalent to performance. But performance, or its equivalent, or a legal excuse for non-performance, must be averred and proved. In this case there was no such averment or proof. Plaintiff received invoice after invoice of machines accepted, without paying, as it was bound by the agreement, or offering to pay by offsetting damages or intimating that it would claim damages on settlement. Even after such intimation, if made in its letters of April 19th and 26th, it was substantially withdrawn by those immediately following. The next one shown in the abstract, under date of May 27th, reads thus: '*Gentlemen:* Herewith find note for $1,434.46, which is to apply on our account, and which will cover invoice as per statement attached. There are possibly a few shipments made since the 25th *inst.* that will not appear on this statement. They will be settled for as soon as the wheels are received and checked in. You will understand that when shipments are made by freight there is a few day's delay at each end, and sometimes our office force is crowded and the bills are not checked in promptly.' This shows payment in part in the same manner prescribed by the contract, and a clear promise to pay the balance, if any, in the same manner, and not by offsetting any claim for damages, when the wheels should be received and checked in; June 2d, it requested appellee to cancel all orders

it had not filled—not on account of its claim for damages, but because of 'the continued rains and bad roads throughout the entire country,' causing a falling off of its orders for bicycles, and the cancellation of many it had received, and adding: 'We believe this will be but temporary, as it certainly can not rain all summer, and if it fairs up soon there will be a big demand; still, we do not want to load up at this time.' June 16th—it wrote: 'We hand you herewith our paper to the amount of $814.42, to cover items as per enclosed statement of account. Please receipt and return statement, and oblige.'

"June 23d, it made some complaint of defects in wheels lately received, but not a word about a claim for damages, and the next is that of July 23d, announcing its intention not to pay another cent until there should be an adjustment of its claim, as hereinabove stated. These five letters are all of appellant's that are abstracted, from the date of the first to that of the last. During all this time it was willfully withholding its acceptances for machines received, and was in arrears when it brought the suit. They had been received on the terms of the contract as to payment—which was to be made on delivery. Appellant refused to comply with those terms. It, therefore, could not maintain an action on the contract for the delay in shipment of the machines received, and by the refusal the vendors were excused from further delivery. Appellee was not bound to go on delivering, without receiving a cent in payment until appellant's claim for damages, known to be contested, should be adjusted to its satisfaction.

"Nor do we see how it could take advantage of appellee's default, even if it were here seeking to do so by way of set-off or recoupment. Set-off is a counter-claim, as to which the defendant is plaintiff, and must establish his right as upon a distinct action; and, therefore, if for breach of contract, must show he is not himself in default as to the

agreement, whether entire or severable, on which he bases his claim, which in this case it seems appellant could not do. And the same obstacle would stand in the way of re-coupment. For though recoupment, considered as a right, enables a delinquent defendant, conceding to the plaintiff a cause of action, to prevent a recovery or reduce its amount, it is not upon any merit of his own, but for the fault of the plaintiff in connection with the same transaction on which he sues. The burden of proving such fault rests upon him, and is the same it would be if he were plaintiff suing for the damages caused by it; and hence, if that fault consists in the breach of another agreement, independent of the one on which plaintiff sues, but contained in the same instrument and relating to the same subject matter, he must show, in like manner, that he is not himself in default as to that agreement. *Hedstrom* v. *Baker*, 13 Ill. App. 104, and authorities there cited; *Mendel* v. *Fink*, 8 id. 378. The principle is that neither party can, by any means, obtain the aid of a court to enforce in his favor a contract, which, without legal excuse, he has substantially failed to perform on his part.

"It is not pretended that appellant made, or offered to make, any case under the common counts, and for the reasons here stated we are of opinion it could not recover on the contract."

We are disposed to concur with the Appellate Court in the reasoning and conclusions of its opinion filed in this case. The judgment of that court will be affirmed.

*Judgment affirmed.*