## Reeves Pulley Co. v. Jewell Belting Co.

1. CONSIDERATION—*A Promise to do What One is Already Bound to do.*—A promise to do that which one is already legally bound to do does not form a consideration for another's promise.

**Assumpsit,** for goods sold, etc. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 5, 1902.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellant.

ROGERS & MAHONEY and CHILTON P. WILSON, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellee brought suit against appellant to recover for some belting sold and delivered by the former to the latter in October, November and December, 1899, and on January 4, 1900, the declaration being the common counts, and the pleas general issue, set-off, consisting of the common counts and four additional special pleas of set-off, which in different language set up a contract dated December 14, 1898, between appellant and appellee, under which it is alleged the belting sued for was sold and delivered, and modifications of said contract; also, in one of the pleas, a contract made between appellant and appellee April 2, 1900; also breaches of said contracts, respectively, by appellee, for failure to deliver other belting to appellant than that sued for, and claiming damages therefor, and to set off the same against appellee's claim. After issues joined on the several pleas, a trial before the court and a jury resulted in a verdict for appellee and judgment thereon for $575.33, from which this appeal is taken.

Complaint is made of the giving of certain instructions for appellee, of the refusal of an instruction asked by appel

lant, and of the admission by the court of certain evidence bearing upon the authority of one Morgan, an agent of appellee, to execute the said contract of December 14, 1898. In view of the conclusion reached, we deem it unnecessary to pass upon these claims.

We think the evidence, which consists largely of an extensive correspondence between the parties and need not be stated, clearly establishes that the belting sued for was sold and delivered by appellee to appellant pursuant to an agreement between them made about the day of its date, shown by the following written proposition accepted by appellant's manager, to wit:

"CHICAGO, ILL., Dec. 14, 1898.

REEVES PULLEY Co., CITY.

GENTLEMEN : We propose to furnish you leather belting for the year 1899 at the following discounts : Jewell, extra heavy, 60 per cent; Hartford, 70 per cent; Zenith, 70-10 per cent; Dynamo, 70 per cent; Light double, 70 per cent. All belts bearing our stamp are thoroughly guaranteed as to workmanship and stock, and if anything is wrong with them we agree to make them good to you. Terms, net cash, sixty days. Thanking you, etc.,

JEWELL BELTING Co.,
H. B. MORGAN."

Dealings pursuant to this agreement began between the parties about January 1, 1899, and continued until early in the year 1900. The belting sued for was sold and delivered, commencing October 31, 1899, continuing during the months of November and December following, and up to January 4, 1900, when the last item in the bill was delivered. All belting sold and delivered prior to October 31, 1899, was paid for by appellee, the last payment being made on October account December 23, 1899, by check of $72.56.

Appellant does not question the receipt by it of the belting sued for, or that it should pay appellee therefor. The amount it should pay is questioned, but the amount allowed by the jury is amply justified by the evidence, if appellant is not entitled to have set off against that amount damages which it alleges it has sustained by the failure of appellee to fill certain orders for belting, hereinafter referred to.

This question as to amount arises out of the meaning of the phrase, " the following discounts," used in the above agreement, as applied to the several percentages therein specified. We think from a consideration of all the evidence, it means discounts from what was recognized in the Chicago market among leather belting manufacturers as the " list price," being a price list adopted by the Leather Belting Manufacturers Association, with reference to which dealers fixed their prices by certain discounts from this list.    When the goods sued for were ordered by appellant does not appear, nor does it appear when any of the goods sold, during the course of the dealings between the parties, were ordered.

Beginning with an order made on June 20, 1899, appellant ordered different amounts of belting of appellee from time to time, during the months of July, September, November and December, 1899, which appellee failed to fill, except said order of June 20th, which was filled three or four weeks later, but was in part returned to appellee on the direction of its agent, Mr. Morgan.    Appellant did not get anything to take the place of the part returned.    It does not appear that appellant asked that this belting returned should be replaced by appellee.    As early as October 6, 1899, it appears from the correspondence that appellee had drawn on appellant for an amount then overdue by it under the contract between them, which appellant declined to pay because, as it claimed, appellee had refused to fill orders for belting.    There were several such complaints and explanations made by appellee, and apparently all differences were satisfactorily arranged late in October, or in any event November 21, 1899, when appellant paid up its account in full to October 1, 1899.

December 1, 1899, appellant wrote appellee, calling attention to four of its unfilled orders, being orders given November 18, 23 and 30, 1899.    Appellee answered that owing to an unexpected condition of affairs, it was unable to say definitely when the orders could be delivered. December 20, 1899, appellant again wrote appellee and called attention to " our several orders " not being filled, and

insisted upon definite information as to what it might expect in way of delivery. Appellee answered the next day that on account of "present conditions" it could not say definitely when the orders would be filled; that the matter had been passed along to its factory for attention, and just as soon as in a position to give a more definite reply, would certainly do so.

Nothing further appears to have occurred between the parties until March 9, 1900, when appellee sent notice to appellant of a draft upon it of $575.07, being the amount of its account to January 1, 1900, and asking that it be honored. Again, on March 15th, there was a letter of appellee to appellant, stating that the draft of $575.07 was returned unpaid, and asking a remittance as early as possible; and still another letter on March 23d, stating the balance from appellant to appellee overdue as $644.70, and urging a remittance, to which last letter appellant responded, in substance, on March 24, 1899, that it would pay just as soon as convinced that appellee intended to fill appellant's orders. The orders then unfilled were the ones above referred to, which were given in July, September, November and December, 1899, and the one in June, if it can be said that was an unfilled order. It is for appellee's failure to fill these orders that appellant asks damages by way of set-off. The whole amount for which this suit was brought was then, March 9, 1899, overdue by the terms of the contract of December 14, 1898, and a part of it more than two months overdue.

It should be noted that by the agreement no particular time is fixed within which belting was to be ordered nor within which it was to be delivered after ordered. The most that appellant can claim is that delivery should be made within a reasonable time after the orders were made. There is no proof in the record from which such reasonable time can be determined. Even if appellee was not prompt in filling appellant's orders for belting, that fact did not excuse the latter's failure to pay for what belting appellee had delivered at the time it was due under the terms of the

agreement between them. Following March 24, 1899, the correspondence between the parties is quite extensive, appellee claiming it should be paid by appellant what was overdue from the latter, and appellant insisting no payment would be made until all its orders had been first filled. Finally, as we construe the correspondence, appellee promised to fill all appellant's unfilled orders promptly after April 16, 1900, and appellant in return promised to pay its past due account, provided the orders were filled within a few days or even a week from May 5, 1900. This proviso was not, in terms, accepted by appellee, but it replied May 9, 1899, that it was pushing the "orders with all possible haste," and asked for pardon for the unavoidable delay. Appellee having delivered none of the belting on these orders, May 15th appellant gave notice to appellee that appellant would refuse to receive any belting on the back orders. In reply to this letter appellee wrote appellant that sixty-five rolls of the belting was then ready for delivery, and the balance in course of manufacture and in transit to appellee, and called attention to appellant's letter as to extension of time for the delivery which is above referred to. Nothing further occurred between the parties prior to the commencement of this suit, except a demand for payment by appellee of appellant on May 17, 1899, for the overdue account, stating that this demand was made in view of appellant's cancellation of all orders in appellee's hands for leather belting.

Upon the above basis of facts appellant relies for recovery under its pleas of set-off. We think the claim is not tenable.

It seems clear that appellant failed to keep its contract of December 14, 1898, by its failure to pay for the belting delivered to it thereunder, and for which the suit is brought within the time thereby agreed, viz., sixty days from October 31, 1899, the date of the first delivery, and within sixty days from January 4, 1900, the date of the last delivery. No breach of the contract by appellee prior to either of these dates is shown. And even if it could be said there

had been such breach, it applies to other orders than those under which the goods sued for were delivered and on account of which appellant seeks to recover damages. Before it could recover for such a breach it must first show it had kept the contract on its part. Harber v. Moffatt, 151 Ill. 84–92, and cases cited.

It is, however, claimed that appellant's right to recover may be based upon a modification of the contract of December 14, 1898, agreed to by the parties, or a new contract which it is said is established by the correspondence of the parties following March 24, 1899, above referred to. We think this claim can not be maintained. In the first place, it is by no means clear from this correspondence that the minds of the parties met and that they agreed upon any specific modification of the agreement of December 14, 1898. If so, we are unable, after a careful reading of it, to determine with definiteness, what such modification was. The same is true as to any new contract. The minds of the parties failed to meet. Appellee may have thought there was a modification or a new contract, but appellant's proviso was not definitely accepted, and appellant, by its correspondence, so regarded the situation. Even if appellee did definitely promise to fill the back orders within a week after May 5, 1900, the only consideration therefor was appellant's promise that it would pay its overdue account to appellee. This appellant was bound to do in any event, without any reference to appellee's promise to fill the orders. A promise to do what one is already legally bound to do, can not form a consideration for another's promise. Moran v. Peace, 72 Ill. App. 135–9, and cases cited.

In any view of the evidence, we are of opinion the verdict of the jury is correct, and whether or not there was error in the rulings of the learned trial judge on instructions or in the admission of the evidence referred to, is immaterial.

Numerous claims are made by appellee's counsel in further support of the judgment, but they are not discussed, because what we have said seems sufficient to dispose of the merits of the case.

The judgment of the Superior Court is affirmed.