**J. P. Grier, etc., Plaintiff in Error, v. Thomas A. McClory, Defendant in Error.**

**Gen. No. 17,255.**

Sales—*default of buyer in continuing contract as excusing seller.* Though a seller of milk, under a contract providing that payment for all milk delivered in one month should be made on the fifth day of the next, did not furnish the amount of milk contracted for during a certain month, where the buyer neither paid the amount due nor made a distinct offer to do so by setting off his damages for the failure of the seller to fully perform, on the date payment was due, the buyer could not recover damages for a failure to deliver after a repudiation of the contract by the seller on account of such nonpayment.

Error to the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding.    Heard in the Branch Appellate Court at the March term, 1911.    Reversed and remanded.    Opinion filed October 1, 1912.

HARRY M. ROSENBLUM, for plaintiff in error.

STEDMAN & SOELKE, for defendant in error.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

Suit was brought by the plaintiff in error, hereinafter called the plaintiff, against the defendant in error, hereinafter called the defendant, for the value of 112 cans of milk claimed to have been delivered by the plaintiff to defendant during the months of June and July, 1910, the amount of the claim being $116.20. This was at the rate of one dollar per can for the June deliveries and one dollar and ten cents for the July deliveries. The defense was that plaintiff and defendant had entered into a written contract for the purchase and delivery of milk, and that plaintiff did not deliver all the milk contracted for, and by reason thereof the defendant sustained damage to the amount of more than $500. No dispute, except possibly as to one can, was made by the defendant to the plaintiff's claim, and the case was tried upon the claim of recoupment and set-off interposed by the defendant.

A written contract purporting to have been made April 1, 1910 was introduced in evidence. In this contract it is recited that the plaintiff sells and the defendant buys nine to twelve eight-gallon cans of whole milk each and every day during the period beginning April 1st and ending October 1, 1910, the milk to be delivered at the Green street milk platform of the Chicago, Milwaukee & St. Paul Railway; prices being fixed at from one dollar to one dollar and twenty-five cents per can and payment to be made at the office of the plaintiff on the fifth day of every month for all milk sold and shipped during the preceding month.

Plaintiff testified that defendant asked him if he would not take Stanford's dairy, from Round Lake, and he said he would if he could get a contract for a specific amount, and that the contract was then given. It would appear that the first deliveries were made before the contract was executed, as it is uncontradicted that the contract was signed by the defendant, or his wife in his behalf, some time after April 20th, while deliveries began the early part of the month. The full minimum of nine cans per day was not delivered during the months of April and May, but the defendant testified that he bought milk from others on the same platform at the same prices. During the latter part of May the defendant received from the Stanford dairy and the Mailfald dairy ten or eleven cans per day. On May 27th the defendant requested the plaintiff to notify Stanford not to ship any milk on the Sunday and Monday following, as he was going away and could not use it. Plaintiff testified that he called defendant's attention to the contract and said: "I will notify Mr. Stanford not to ship, but I fear he will stop shipping altogether. This will be at your own peril and risk, and I will not be responsible to furnish you that amount of milk after that date in case Stanford refuses." That this statement was made is denied by the defendant. After May 28th there were no shipments made from the Stanford dairy, but from other sources plaintiff delivered to the defendant about two cans per day until about July 20th. Between the 5th and 20th of July plaintiff on several occasions demanded the amount due for the June shipments, which under the terms of the contract was payable July 5th. Not receiving this amount he ceased delivering, and thereupon brought suit.

The court before whom the case was tried allowed the defendant $309.17 on his claim of recoupment, and deducted therefrom the claim of the plaintiff, and gave judgment in favor of the defendant against the plaintiff for $192.97.

It is insisted by the plaintiff that the contract was modified on May 17th by the action of the parties; that it was terminated at the instance of the plaintiff on July 20th or thereabouts because of the refusal of defendant to pay for June deliveries; that the claim of set-off is based upon matters entirely distinct from the subject-matter of the suit, and should therefore have been disregarded, being for unliquidated damages; and that the finding of the court was against the evidence.

There is evidence in the record that the defendant repeatedly demanded from the plaintiff during the months of June and July that there be delivered to him each day the amount called for in the contract.

It is stated by the counsel for defendant in his brief that it is conceded that unliquidated damages arising out of an independent and different contract than that sued upon cannot be claimed by way of set-off, but that it is the settled law that such damages may be claimed by way of recoupment if they arise under the same contract, where the party claiming same is not in default.

Was the defendant in the present case in default? On his theory the plaintiff was in default during the whole of the month of June, but during that month the defendant accepted the milk that was delivered to him, and under the terms of the contract this should have been paid for on July 5th. It was the duty of the defendant at that time either to pay the amount due to the plaintiff, or to make a distinct offer to do so by setting off his damages. According to defendant's testimony, it was not until the latter part of July and after deliveries had ceased that he made any such offer.

In the case of Bradley v. King, 44 Ill. 339, the court had before it a suit brought by the vendee for failure to deliver a quantity of lumber in accordance with the terms of a written contract. It appeared, however, that the plaintiffs had refused to pay for the last cargo

of lumber delivered to and accepted by them.   The court held: "If the plaintiffs sought at the time of the delivery of the last cargo to pay for it by setting off their damages, it was incumbent upon them to have made a distinct offer so to do to the defendants."   The doctrine of this case was reaffirmed in Harber Bros. v. Moffat Cycle Co., 151 Ill. 84, and in Burt v. Garden City Sand Co., 237 Ill. 481.   It is true the defendant testified that he was ready, willing and able at all times to comply with the contract on his part.   He did not, however, on July 5th comply with it, in that he did not tender payment for the June deliveries, or even offer to set off the amount due on such deliveries against his claim for damages.   We think, therefore, that there can be no recovery on the claim of recoupment for any failure of the plaintiff to deliver after the contract was repudiated by the plaintiff for the failure of the defendant to pay for the June deliveries.   As heretofore stated, there was a dispute between the parties as to what occurred at the time deliveries were ordered to be stopped on May 29th and 30th, the defendant having testified, "Mr. Grier did not tell me at any time that Stanford would get sore if he stopped the milk for two days, or that he, Grier, would not be responsible if I insisted on it.   On the contrary, he said it was all right."   The trial court was evidently of the opinion that the contract was not modified by this occurrence and the attitude of the parties in regard to it thereafter.   Even in this view of the evidence, however, it would seem that the amount awarded in recoupment must have included damages for nondelivery after the date of the rescission, and for this reason the judgment must be reversed.

*Judgment reversed and cause remanded.*