# THE W. H. PURCELL COMPANY

*v.*

## DONALD A. SAGE *et al.*

*Opinion filed December 16, 1902.*

1. CONTRACTS—*when courts will adopt construction put upon contract by the parties.* If the terms of a contract are doubtful and the parties have by their own conduct placed a construction upon it which is reasonable, such construction will be adopted by the courts.

2. SAME—*contract for sale and delivery of coal construed.* A contract whereby a coal dealer agrees to sell and deliver coal "when required, in car lots," between certain dates, will be held to mean such an amount as was needed in the purchaser's business between such dates, and not the amount ordered, where the parties by their conduct have acquiesced in such construction.

3. SAME—*party in default cannot recoup damages.* If the purchaser of a quantity of coal refuses to make payment for coal delivered when required by the contract, until the seller, who had not up to that time been in default, should furnish more coal, the latter may rescind the contract and sue in assumpsit for the price of the coal delivered, and the purchaser, being in default, cannot recoup damages for the seller's refusal to furnish more coal.

*Sage* v. *Purcell Co.* 90 Ill. App. 160, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

On October 24, 1901, the judgment, theretofore entered in this case by the Appellate Court, was reversed, and the cause was remanded to the Appellate Court with directions to recite in its judgment the ultimate facts upon which it acted in rendering judgment against the appellant company. Thereafter on June 11, 1902, the Appellate Court rendered another judgment, reversing, as before, the judgment of the circuit court, and making the following finding of facts, which was embodied in the judgment of June 11, 1902, to-wit:

"That on July 20, 1895, appellants were retail dealers in coal and appellee was engaged in the malting busi-

ness.  On that date appellants made to appellee the following proposition in writing, which was accepted by the appellee, to-wit:          " 'CHICAGO, *July 20, 1895.*

" '*The W. H. Purcell Co., No. 1107 Tacoma Bldg., City:*

" 'GENTLEMEN:—We offer you fifteen hundred (1500) tons, more or less, of anthracite pea coal (screened) equal in quality to the pea coal recently tested by you at Kensington. This coal to be delivered when required in car lots between Sept. 1st, 1895, and Sept. 1st, 1896, on your malt house tracks at Kensington, Illinois. Price to be $2.75 delivered per net ton, 2000 pounds. Payments to be made the 10th of the month following shipments. This proposition contingent upon strikes, accidents, delays of carriers, and other delays beyond our control. Railroad scales weights to govern settlements.

Accepted. . . . . . . . ,          " 'Yours truly,          SAGE & CO.
    For the W. H. Purcell Co.'

"That the coal mentioned in said contract was for use by appellee in its said business. At different dates between September 1, 1895, and March 1, 1896, appellee ordered appellants to deliver to it coal under said contract aggregating 953⅓ tons, of which amount 785⅓ tons were delivered, the last delivery being 24 tons and 1500 pounds on March 4, 1896. Appellants on March 10, 1896, had failed to deliver 168 tons of said coal ordered by appellee, but furnished to appellee all the coal necessary for the proper conduct of its business from September 1, 1895, to March 17, 1896.

"That the acts of said parties and their correspondence, contained in the record, show that they construed said contract to require appellants to furnish to appellee coal thereunder as ordered by appellee, and which was necessary for the proper conduct of its business between September 1, 1895, and September 1, 1896. All said coal which was delivered during January, 1896, and prior thereto, was paid for by appellee according to the terms of the contract. The coal delivered by appellants to appellee in February and March, 1896, at the contract price, amounted to $505.05, less $42.22 transportation charges, which were advanced by appellee. Appellee

on March 10, 1896, when requested by appellants to pay for the coal delivered in February, 1896, amounting to $436.99, refused payment therefor, and at the same time advised appellants it would not pay until more coal was delivered by appellants.

"That no coal was delivered to appellee by appellants after March 4, 1896, and on March 11, 1896, appellants gave notice to appellee they would deliver no more coal under the contract, and that they would and did thereby rescind said contract because of appellee's said refusal to pay for the coal delivered in February, 1896.

"That, because of appellants' failure to deliver coal on said contract after March 4, 1896, appellee was obliged to and did buy in car lots 714⅝ tons of coal of the kind mentioned in the contract, in the open market, from time to time, as its wants required, its last purchase being made July 30, 1896, and, on account of the higher market value of coal above the said contract price, was obliged to pay in excess of said contract price for said 714⅝ tons of coal $1228.02.

"And it is further considered by the court that said appellants recover of and from said appellee the sum of $604.09, and their costs by them expended in the circuit court of Cook county, and also in this behalf expended, to be taxed, and that they have execution therefor."

The present appeal is from the judgment so entered by the Appellate Court on June 11, 1902.

DUPEE, JUDAH, WILLARD & WOLF, for appellant.

P. H. BISHOP, (CHARLES C. BUELL, of counsel,) for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

This case has been before this court twice. The first decision is reported as *Purcell Co.* v. *Sage,* 189 Ill. 79. There the judgment of the Appellate Court, which had

reversed the judgment of the circuit court and entered a final judgment in favor of the present appellees, was reversed by this court, and the cause was remanded to the Appellate Court with directions to that court to recite the ultimate facts, upon which its judgment was based.

Thereafter the Appellate Court entered another judgment, reversing the judgment of the circuit court and again entering a judgment in favor of the present appellees, Sage & Co., and recited in its judgment what purported to be a finding of facts. But the second judgment, so entered by the Appellate Court, was reversed by this court, and the cause was again remanded to the Appellate Court, because the finding of facts recited in its judgment was not a finding of the ultimate facts, required to be recited by section 87 of the Practice act; and this court remanded the cause to the Appellate Court with directions to recite in its judgment the ultimate facts, upon which it acted in rendering judgment against the present appellant, the W. H. Purcell Company, as will appear by reference to the case of *Purcell Co.* v. *Sage*, 192 Ill. 197.

Thereafter the Appellate Court entered the judgment of June 11, 1902, which is set forth in the statement preceding this opinion. A fuller statement of the facts and of the pleadings will be found in the cases above referred to of *Purcell Co.* v. *Sage*, 189 Ill. 79, and *Purcell Co.* v. *Sage*, 192 id. 197. In its last judgment the Appellate Court has made a full finding of the facts as required by the statute, and its finding of facts so made is binding upon this court.

The party, spoken of in the judgment of the Appellate Court as the "appellee," is the present appellant, the W. H. Purcell Company, and the parties there spoken of as "appellants" are the present appellees, Donald A. Sage and William G. Sage, constituting the firm of Sage & Co.

By the terms of the contract of July 20, 1895, the present appellees, Sage & Co., agreed to deliver coal

to the present appellant, the W. H. Purcell Company, "when required in car lots between Sept. 1st, 1895, and Sept. 1st, 1896." The word, "required," as here used, evidently has the same meaning as the word "needed." The amount of coal, which was required between the dates mentioned, was the amount of coal which was needed in the business of the appellant for that period. (*Minnesota Lumber Co.* v. *Coal Co.* 160 Ill. 85). The acts of the parties and their correspondence, as contained in the record, show that they gave to the contract the construction thus indicated. That is to say, they construed the contract as requiring appellees to furnish to appellant coal thereunder, as ordered by appellant and which was necessary for the proper conduct of its business between September 1, 1895, and September 1, 1896. When the terms of an agreement are in any respect doubtful or uncertain, and the parties have by their own conduct placed a construction upon it which is reasonable, such construction will be adopted by the courts in the event of litigation concerning it. (*People ex rel.* v. *Murphy,* 119 Ill. 159; *Burgess* v. *Badger,* 124 id. 288; *Carroll* v. *Drury,* 170 id. 571). Evidently, there was here some ambiguity as to the meaning of the word, "required," contained in the contract; and the Appellate Court has found, as matter of fact, what construction was placed upon it by the parties themselves.

Among the facts, found by the Appellate Court in its judgment, is this fact, that the appellees on March 10, 1896, had "furnished to appellant all the coal necessary for the proper conduct of its business from September 1, 1895, to March 17, 1896." Therefore, on March 10, 1896, the appellees had not made default in the performance of their part of the contract. By its terms, appellant was to pay for the coal on the 10th day of the month succeeding the shipments of coal. Appellant paid for all the coal, which was delivered to it by the appellees during January, 1896, and prior thereto. But appellant did not

pay the appellees for the coal delivered in February and March, 1896. On March 10, 1896, the appellees requested appellant to pay for the coal delivered in February and March, 1896, but appellant refused to pay therefor "and at the same time advised appellees it would not pay until more coal was delivered by appellees." It thus appears that appellant was first in default in the performance of its contract in refusing to pay on March 10, 1896, when demand was then made for payment for the coal theretofore delivered in February and March. Thereupon, on the next day, March 11, 1896, appellees, because of such refusal to pay for the coal so delivered, rescinded the contract, and gave notice to the appellant of such rescission, and that they would deliver no more coal.

Appellees were justified in declaring the contract rescinded on March 11, 1896, because they were not then in default, and had not violated their contract on or prior to that date. They were, therefore, entitled to recover at the contract price for coal they had delivered to appellants prior to that day, with interest. At the same time, appellant, having violated its contract in refusing on March 10, 1896, to pay for the coal theretofore delivered in February and March, was not entitled to recover, as is said by the Appellate Court, "for any alleged damages claimed to have been incurred by reason of the appellants' (appellees here) failure to deliver coal after it refused to pay." The appellant was not entitled to recoup damages for a breach of the contract, unless it had performed its part of the contract, or was ready and willing to do so at the time required; but by refusing to make payment, when demanded on March 10, 1896, it failed to perform its part of the contract. Before appellant could recoup for a breach of contract, it was required to prove that it had performed the essential requirements of the contract, or was ready and willing to do so. If appellant, after the making of the contract, had on the 10th day of each month, paid, or offered to pay, for all coal delivered

during the preceding month, and the appellees had failed on their part to deliver coal, then the appellant would have been in a position to recover damages for the failure of appellees to perform their contract.   The record, however, shows a violation of the contract by the appellant in the manner above stated. (*Harber Bros. Co.* v. *Moffat Cycle Co.* 151 Ill. 84; *Hess Co.* v. *Dawson*, 149 id. 138). In the latter case of *Hess Co.* v. *Dawson*, *supra*, it was held that a defendant, when sued for articles sold and delivered to him by the plaintiff, will not be entitled to recoup damages for a breach of the contract, unless he, the defendant, has performed his part thereof, or has been ready and willing to do so at the time required.  It is also there held that, where the purchaser of articles fails to pay for the same as he agreed to, the vendor may abandon the special contract, and sue and recover in an action of assumpsit for the value of the articles sold and delivered to the defendant.

It follows from what has been said that, as to the plea of set-off filed by the defendant, in which the defendant claimed damages for the alleged failure of the appellees to deliver to it certain of the coal contracted for, the demurrer to said plea was properly sustained by the trial court.   But the Appellate Court well say "that the error, if there was error, in sustaining the demurrer to the amended plea of set-off, was harmless, because, under the agreed statement of facts, the appellee is not entitled to recover anything by way of set-off."

For the reasons above stated, we are of the opinion that the Appellate Court committed no error in rendering the judgment, which was rendered by it on June 11, 1902, and accordingly said judgment is affirmed.

*Judgment affirmed.*