(No. 11145.—Judgment affirmed.)

THE CHICAGO WASHED COAL COMPANY, Appellant, vs.
R. C. WHITSETT et al. Appellees.

*Opinion filed April 19, 1917—Rehearing denied June 7, 1917.*

1. CONTRACTS—*vendee suing for damages for failure to deliver coal must prove payments were made or offered according to the contract.* Where a contract for the daily delivery of a certain number of tons of coal provides that payments shall be made on the tenth day of each month for coal delivered during the preceding month, the vendee, in order to maintain an action for damages for non-delivery, must prove that the payments were made or offered according to the contract, and the mere fact that the vendor accepted a payment after it was due and after rescinding the contract will not relieve the vendee of the burden of showing performance on his part or excuse for non-performance.

2. SAME—*when acceptance of overdue payment will not estop vendor to set up rescission of contract.* Where the vendor has declared a contract for daily delivery of coal rescinded for failure of the vendee to make a monthly payment when it became due, the mere fact that it subsequently accepted the payment will not estop it from insisting on the rescission of the contract as a defense of an action by the vendee for failure to make deliveries after the payment became due.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JACOB H. HOPKINS, Judge, presiding.

GEORGE C. OTTO, for appellant.

POMEROY & MARTIN, for appellee R. C. Whitsett.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellant, the Chicago Washed Coal Company, on December 3, 1910, brought suit in the municipal court of Chicago against the appellees, R. C. and A. H. Whitsett, co-

partners doing business as the R. C. Whitsett Coal and Mining Company, to recover damages for an alleged breach of contract to furnish it certain grades of coal at the rate of 150 tons per day from December 28, 1909, to March 30, 1910. Two trials were had in the municipal court. The first trial resulted in a verdict in favor of appellees. A new trial was granted, and on a second trial before another judge the court instructed the jury to return a verdict in favor of the appellees. A motion for a new trial was made and overruled and judgment entered on the verdict. Appellant prosecuted an appeal to the Appellate Court for the First District, where the judgment of the lower court was affirmed. A certificate of importance and appeal were granted by that court and the cause is in this court pursuant thereto.

Several grounds are urged for reversal of the judgment, but as we are of the opinion that appellant failed to make out a *prima facie* case it is unnecessary to consider the other questions raised.

The contract was entered into December 24, 1909, and provides that appellees were to furnish appellant with coal from the mine at Ward, Illinois, from December 28, 1909, to March 30, 1910, at the rate of 50 tons per day of No. 3 screenings at seventy-two and one-half cents per ton, and 100 tons per day of 6x3 egg at $1.45 per ton, f. o. b. the mines. The freight rate from the mines to Chicago was ninety cents a ton by way of the Illinois Central railroad. The coal was to be shipped from the Chicago-Carbondale Coal Company's mines, appellant to have preference over all other shipments, and all deliveries to be made subject to the usual contingencies occasioned by strikes, lockouts, delays in transportation, changes in freight rates or other causes beyond the control of appellees. All payments were to be made on or before the 10th day of each month for all shipments made during the preceding month. Appellees were unable to secure the kind of coal contracted for

the December delivery, and a verbal agreement was made whereby a different kind of coal was received on the contract during that month. The total deliveries for December amounted to $101.83. Appellees rendered appellant a statement for the coal so delivered on December 31, 1909. Appellant failed to make payment of this account on or before January 10, as provided by the contract, and appellees ceased to make deliveries on the contract after that date. The last coal delivered by them was January 9, 1910. On January 15 appellant paid its account for coal delivered in December in full and on January 17 wrote appellees as follows: "We beg to call your attention to the fact that we have received no shipments on our contract made with you for coal from Ward, Illinois, since January 8, and have had the matter up with your Mr. Stinson and was assured by him that he was watching the same and was doing all he could to get same forwarded to us. We must insist that we receive shipment on this contract to the extent of 150 tons per day, as stipulated. Trusting we may hear favorably from you by return mail, we remain." To which appellees replied on January 18 as follows: "We are in receipt of your favor of the 17th inst., and are surprised to note that you still expect to receive shipments under this contract. If you refer to your contract you will note that it calls for payment on or before the 10th of each month for all shipments made during the preceding month. Therefore, inasmuch as we did not receive your remittance on the 10th inst., we canceled your contract on the 11th inst." The total shipments of coal made during the month of January until the contract was canceled on January 11 amounted to $281.76. Appellant also failed and refused to pay this account on or before February 10, as provided in the contract, or at any time thereafter until suit was brought and a judgment recovered against it for such amount.

278 — 40

Appellees rely upon the failure of appellant to pay its December account on or before January 10 and their letter of January 17 notifying appellant of the cancellation of the contract as constituting a rescission of the contract; also the failure of appellant to pay the January account on or before February 10 as such an abandonment of the contract as to preclude a recovery thereon by appellant at this time even if the prior rescission was wrongful, which they do not concede. Appellant insists that the acceptance of the payment for the December delivery on January 15 was a waiver of its failure to pay on or before the 10th of the month, and the letter notifying it of the cancellation of the contract was such a repudiation of the contract by appellees as to excuse appellant from a further performance of the contract on its part. Both the trial and Appellate Courts adopted the view of appellees, and we concur in their views. When appellees ceased to make deliveries on the contract after January 8, 1910, and thereafter notified appellant the contract had been canceled, the contract was terminated for all purposes so far as appellees were concerned. Their repudiation of the agreement could not have been made more emphatic or complete. The acceptance of the payment for the past due account did not estop them from insisting upon a rescission of the contract, when they were, at the time of accepting such payment, refusing to further comply with such contract. They had the right to receive or accept payment for coal already delivered in any event, whether the contract was canceled or not. If appellant deemed the contract still valid and binding it then had the right to treat the contract as terminated for all purposes and bring an action for its breach and for the damages which it had sustained by reason of non-performance or being prevented from performing the contract, or it had a right to treat the contract as subsisting and to keep it alive for the benefit of both parties, keeping itself at all times ready, able and willing to perform its part of

the contract and at the expiration of the term of the contract sue for its damages sustained by reason of the wrongful non-performance by appellees, but it could not do both. (*Lake Shore and Michigan Southern Railway Co.* v. *Richards*, 152 Ill. 59.)   If it elected to keep the contract alive and in force for the purpose of recovering damages for future profits it must do so for the benefit of both parties, and must both allege and prove performance of the contract upon its part or a legal excuse for its non-performance before there could be a recovery on the contract.   (*Lake Shore and Michigan Southern Railway Co.* v. *Richards*, *supra; Kadish* v. *Young*, 108 Ill. 170.)   In the present instance appellant did neither, although it evidently tried to do both.   It treated the contract as subsisting in so far as its right to demand delivery of coal thereunder was concerned, and broken in so far as appellees' right to demand payment of the coal previously delivered was concerned. This was fatal to appellant's right of action on the contract.   If it elected to keep the contract alive it must show performance on its part or legal excuse for its non-performance.   In order to do this it was incumbent upon appellant to show payment for the coal previously delivered or an offer to do so, or set the same off against its damages on the contract and at the time and in the manner provided by such instrument.   (*Hess Co.* v. *Dawson*, 149 Ill. 138.) This appellant failed to do, as the evidence shows conclusively it refused to pay for the coal delivered in January, prior to the cancellation of the contract, until suit was brought on the account and judgment rendered against it for the amount.   Therefore the most that can be said for appellant's case is that its proofs show that both parties were in default.   In this condition of the record there could be no recovery by either against the other on the contract. (*Harber Bros. Co.* v. *Moffat Cycle Co.* 151 Ill. 84.)   In this respect appellant is very much in the same situation as the defendant in *Purcell Co.* v. *Sage*, 200 Ill. 342.   In

that case the contract provided for the sale and delivery of 1500 tons of anthracite coal in car lots, as required, from September 1, 1895, to September 1, 1896, all payments to be made the 10th of the month following shipment. For a time the coal delivered was paid for according to the terms of the contract. On March 10, 1896, the buyer refused to pay for the February delivery and notified the seller it would not pay for such coal unless more coal was delivered. Thereupon, on the following day, the seller rescinded the contract, gave the buyer notice of such rescission, and later brought its action in assumpsit to recover for the coal delivered. The buyer then sought to recoup its damages alleged to have been sustained by reason of the seller's refusal to furnish more coal. We there said: "The appellant was not entitled to recoup damages for a breach of the contract unless it had performed its part of the contract or was ready and willing to do so at the time required, but by refusing to make payment when demanded on March 10, 1896, it failed to perform its part of the contract. Before appellant could recoup for a breach of contract it was required to prove that it had performed the essential requirements of the contract or was ready and willing to do so. If appellant, after the making of the contract, had on the 10th day of each month paid, or offered to pay, for all coal delivered during the preceding month, and the appellees had failed on their part to deliver coal, then the appellant would have been in a position to recover damages for the failure of appellees to perform their contract. The record, however, shows a violation of the contract by the appellant in the manner above stated. (*Harber Bros. Co.* v. *Moffat Cycle Co.* 151 Ill. 84; *Hess Co.* v. *Dawson,* 149 id. 138.) In the latter case of *Hess Co.* v. *Dawson, supra,* it was held that a defendant, when sued for articles sold and delivered to him by the plaintiff, will not be entitled to recoup damages for a breach of the contract unless he, the defendant, has performed his part

thereof or has been ready and willing to do so at the time required. It is also there held that where the purchaser of articles fails to pay for the same as he agreed to, the vendor may abandon the special contract and sue and recover in an action of assumpsit for the value of the articles sold and delivered to the defendant."

For the reason given, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*