Black Diamond Fuel Co. v. Illinois F. & P. Co., 219 Ill. App. 150.

and makes no reference to the fiscal year of the city. Moreover, the application for a license was made to the Mayor on the 2nd day of July, 1919, and the year which applicant's license would have covered if it had been issued had not expired when the same was heard in this court. We do not therefore regard the point as well taken.

For the errors indicated, the judgment of the circuit court is reversed and the cause remanded with directions to order the writ of mandamus.

*Reversed and remanded with directions.*

---

**Black Diamond Fuel Company, Appellee, v. Illinois Fuel & Phosphate Company, Appellant.**

**Gen. No. 6,826.**

1. SALES, § 376*—*measure of damages for nondelivery.* Ordinarily the measure of damages for failure to deliver coal to a retail dealer according to contract would be the difference between the contract price and the market price at the place of delivery.

2. SALES, § 379*—*right to recover for loss of profits on nondelivery.* On breach of contract by a wholesale coal dealer to supply coal to a retailer, the latter is entitled to recover for the loss of profits on coal which the seller failed to deliver according to contract if he was unable, by the exercise of reasonable diligence after breach of the contract, to procure coal elsewhere to supply his customers.

3. PLEADING, § 246*—*effect of amendment of bill of particulars by giving credit for item.* In an action to recover the price of coal delivered, where defendant pleaded certain payments made to plaintiff in addition to the contract price upon representations that such payments were necessary in order to procure certain carloads of coal, plaintiff, by amending its bill of particulars so as to give credit for those amounts, conceded that it had no right to extort such sums from defendant.

4. SALES, § 130*—*when nondelivery not due to governmental interference.* In an action to recover for coal delivered to defend-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

SECOND DISTRICT—OCTOBER, 1920.     151

Black Diamond Fuel Co. v. Illinois F. & P. Co., 219 Ill. App. 150.

ant, where defendant sought to recoup for damages sustained by reason of plaintiff's failure to deliver the full amount of coal contracted for, evidence *held* to show that plaintiff's failure to deliver such coal was due to the fact that it became unprofitable to do so and not because of governmental interference as claimed by plaintiff.

5. SALES, § 320*—*remedies in case of breach by both parties.* In an action for the price of coal delivered to a retail coal dealer, where it appeared that plaintiff first defaulted in the delivery of coal according to contract, which default was followed by a default on the part of defendant in making payment for coal delivered, neither party threatening to cancel the contract and each promising performance, and defendant retaining such coal as was delivered, plaintiff was entitled to recover for the coal which was delivered and defendant was entitled to recoup for damages sustained by reason of plaintiff's failure to deliver the remainder of the coal according to contract.

6. SET-OFF AND RECOUPMENT, § 43*—*propriety of refusing instructions on set-off where recoupment set up.* In an action for the contract price of coal delivered to defendant where there was no plea of set-off and no notice of set-off with the plea of the general issue, and a stipulation stated that the only question submitted to the jury was whether defendant was entitled to damages by way of recoupment, instructions relating to set-off were properly refused.

7. SET-OFF AND RECOUPMENT, § 45*—*limitation on amount recoverable by recoupment.* A verdict for defendant for more than plaintiff's claim is not permissible in recoupment.

8. INSTRUCTIONS, § 126*—*refusal of abstract instructions.* An instruction containing a general proposition of law, not applied to the case, is properly refused.

9. DAMAGES, § 200*—*when instruction properly refused.* An instruction which includes an element of damages too vague and general, and not proper under the evidence, is properly refused.

10. STIPULATIONS, § 24*—*how instructions affected by.* In an action for the purchase price of coal in which defendant claimed recoupment, an instruction which required a verdict for defendant if the evidence was evenly balanced was properly refused where a stipulation required a verdict for plaintiff unless defendant established damages in recoupment, as to which the burden of proof was upon defendant.

Appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded. Opinion filed October 27, 1920.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

LUTHER B. BRATTON and WERNER W. SCHROEDER, for appellant.

J. HARVEY ROBILLARD, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Zerler Coal Company was engaged in the wholesale coal business at Chicago and was managed by Charles T. Zerler. The Illinois Fuel & Phosphate Company was engaged in the retail coal business at Kankakee and was managed by C. H. Rumley. In August or September, and on October 1, 1917, arrangements were made between these managers, by which the Zerler Coal Company agreed to supply the Kankakee Company with coal for the winter months for its retail business in Kankakee. Thereafter the Zerler Coal Company accepted orders from the Kankakee Company for coal in various amounts and of various kinds. Zerler left the Zerler Coal Company on the 1st of January, 1918, and the name of that company was changed to Black Diamond Fuel Company. The Kankakee Company paid for or to apply upon various consignments of coal and did not pay for others, and this suit was brought by the wholesale company against the retail company to recover the amount alleged to be due plaintiff. Plaintiff filed an amended declaration containing only a common count for goods, wares and merchandise sold and delivered, with an affidavit of claim, stating that the amount due to plaintiff from defendant, after allowing all just credits, deductions and set-offs, was $1,043.40. To this defendant filed a plea of nonassumpsit, with an affidavit that two payments of $25 and $50 had not been credited on account, and also that plaintiff failed to deliver coal as required by its contracts and thereby defendant was not able to supply a large portion of its customers with coal, and suffered great loss thereby, etc.

Plaintiff also filed a bill of particulars. During the trial plaintiff amended its bill of particulars, so as to give defendant credit for said payments of $25 and $50 and thereby reduced the total amount due to $968.40. At the close of the evidence the parties stipulated that the statement of account in the bill of particulars was true and correct, and that the only issue to be decided by the jury was whether or not defendant was entitled to damages by way of recoupment. The jury returned a verdict for plaintiff for $968.40, thereby defeating defendant's claim in recoupment. There was a judgment on the verdict. Defendant appeals.

Under date of October 1, 1917, plaintiff issued a paper on its form, showing that it had sold to defendant 25 cars of Panama No. 8 lump coal, at a price of $2.35 per ton of 2,000 pounds, f. o. b. cars at the mine, and that the present rate of freight from the mine was $.85 per ton, and that 2 cars per week were to be shipped. No. 8 lump coal is coal that has passed over and 8-inch screen, and it is free from impurities and is the best grade of soft coal. A delivery of 2 cars per week would have carried the deliveries practically to January, 1918. Five cars only were delivered. The ordinary rule for damages in such a case would be the difference between the contract price and the market price in Kankakee, but the proof is clear that when plaintiff failed to deliver on this order, it was then too late for defendant to make any other arrangements by which it would get the coal contracted for. Each wholesale dealer in coal had made his agreements with his customers, and had all he could do to supply the orders of his customers, and could not send coal to defendant. Defendant clearly showed that there was no market in which defendant could buy this coal after plaintiff ceased delivering on the order. Defendant proved that it had constant orders from its regular customers for all this coal; that it cost it from

fifty cents to $1.00 or $1.25 per ton to deliver this coal to its customers in Kankakee, and the freight rate to Kankakee appeared, and it showed that the regular retail price of this coal in Kankakee was from $5.50 to $6.00 per ton. Coal cars are of different capacities, but it was proved that the average capacity of coal cars used in this trade was 45 tons. Therefore the amount that should have been shipped in these 20 cars which plaintiff did not deliver was approximately 900 tons, and the loss to defendant because of not receiving these 20 cars of coal could be approximately determined by the jury from the evidence. A very similar case was presented in *Armeny v. Madson & Buck Co.*, 111 Ill. App. 621. The ordinary rule as to the measure of damages was recognized, but it was held that that rule does not apply when the article purchased cannot be had in the place when and where it should have been delivered, and that in such case profits are recoverable. It was there said:

"If notwithstanding the use of reasonable diligence he cannot procure the article in the market, the measure of damages is the actual loss sustained by him, and if he had resold the article purchased to another, he is entitled to recover the difference between the price he agreed to pay and that at which he resold, subject to all proper allowances for expenses of carrying on the business of the vendee and similar items. * * * Appellants knew when they sold the pens to appellee that its intention was to sell them again and at a profit. That is what it was in business for and the object for which it bought them. Appellants must therefore be regarded as having contemplated resales by appellee at a profit and cannot complain at being compelled to make good to it the loss on the resales if it was unable to supply its customers by buying the goods in the open market."

Numerous authorities are there cited in support of these propositions. It was held in *Van Arsdale v. Rundel*, 82 Ill. 63, that on the breach of a contract to

deliver goods, the measure of damages is the loss sustained by reason of the failure to deliver. In *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, it was held that a recovery could be had for prospective profits if there are any criteria by which probable profits can be estimated with reasonable certainty. As defendant could obtain no coal by wholesale delivered at Kankakee, we conclude that the loss of its profits on these 20 cars under the special facts of this case and the foregoing authorities should be allowed it as damages, if a proper case therefore otherwise appeared. What other failures there were to deliver on small orders need not be considered as the failure under the order of October 1, 1917, is sufficient for the present purpose. It follows that defendant was entitled to recoup unless the proofs show some sufficient defense against the claim for recoupment.

The sale bill or acceptance of October 1, 1917, has at the top of the document at the upper right-hand corner, evidently in print, these words: ''Terms cash—payable in current exchange.'' It is evident from the proof on both sides that the provision just quoted was not intended to be observed by either side. There is proof from which the jury could reasonably find that the payments for each month's shipments were intended to be made on the 10th day of the following month, or about that time. Plaintiff contends defendant cannot recoup because defendant did not pay as required by the contract, relying on *Harber Brothers Co. v. Moffat Cycle Co.*, 151 Ill. 84; *W. H. Purcell Co. v. Sage*, 200 Ill. 342; and *Chicago Washed Coal Co. v. Whitsett*, 278 Ill. 623. These were cases where a forfeiture had been declared. Herein, both parties were delinquent. The acceptance of October 1 required plaintiff to ship 2 cars of Panama No. 8 lump coal each week. Assuming Saturday as the close of each week, it should have delivered 2 of those cars on Saturday, October 6, 1917. Defendant was not then in default

of any payment. Plaintiff did not deliver them. If the acceptance of October 1 be treated as a contract by itself, plaintiff was also required by the contract to deliver 2 cars on each of the Saturdays, October 13, 20 and 27, and November 3. Defendant owed nothing under the order of October 1 until November 10. At that time plaintiff had delivered only 5 cars and was in default 5 cars and the time had not arrived when defendant should make any payment therefor. On October 10 defendant owed for the September shipments and did not make that payment until October 22. On November 10 it owed for the October bills, including said 5 cars, and paid none of this until November 1, and then paid only $300, but with a promise that a further remittance would follow shortly. Defendant paid nothing further and never paid on the November shipments, and plaintiff, while it shipped other kinds of coal on other orders in November, never shipped anything further under its acceptance of October 1. Plaintiff never rescinded the contract or threatened to do so because of the nonpayment. Its delay in shipment of coal was placed on other grounds. Plaintiff claimed the United States government interfered with its getting the coal. We are of opinion that the evidence does not show that that was the cause of its suspension of shipments. Shortly after the middle of October, Zerler told Rumley that he could get a car of coal for him by paying $25 as a bribe and defendant paid it, and early in November Zerler offered to get 2 cars of coal if he would pay $50 extra therefor, but that the check must not be made to the corporation but to Zerler himself. An increase in the price of $25 per car is a little more than fifty cents a ton, and the real meaning of these transactions appears to be that plaintiff could get the coal but would have to pay more for it than it anticipated when it accepted this order and that plaintiff was unwilling to pay that extra price. By amending its bill of particulars, so

as to give credit for those two payments, plaintiff conceded that it had no right to extort these sums from defendant for getting that coal. From the evidence we conclude the real reason why plaintiff ceased shipping coal was because plaintiff could not get the coal at a price which would make it profitable to plaintiff to keep its contract with defendant. On January 1, 1918, it abandoned the wholesale business, and went into the business of selling coal at retail at South Chicago. That meant that plaintiff could get coal but not a price which would make it profitable to fill its contract with defendant. Under these circumstances, with plaintiff first in default and then defendant in default and neither party threatening to cancel the contract and each party promising performance, which it did not keep, we conclude that the cases relied upon by plaintiff to defeat recoupment ought not to be followed. In *Evans v. Chicago & R. I. R. Co.*, 26 Ill. 189, Evans sued the railroad company to recover for wood delivered by him to the company at its request. He had not delivered all the wood called for by the contract. The court said:

"Even if the road was not in default, and they received and appropriated the wood to their own use, so that plaintiff in error could not be repossessed of his property, he might recover for the portion delivered by him, and used by the company. But in that case the price agreed upon in the contract would be taken as to the measure of damages, but from these damages the company would have the right to recoup such amount as they had been damaged by a nonperformance of the agreement by plaintiff in error. * * * By retaining this sum, the company had, at all times in their own hands, a sufficient sum to cover any damage they might sustain by a breach of the contract, and consequently were relieved from all necessity of bringing suit on a failure to perform by the other party, and if sued they would then have the right to recoup from that sum the damages thus sustained."

In *Richards v. Shaw,* 67 Ill. 222, the court said:

"It is a rule, supported by a very respectable weight of modern authority, that, if the vendee of a specific quantity of goods sold under an entire contract receive a part thereof, and retain it after the vendor has refused to deliver the residue, this is a severance of the entirety of the contract, and the vendee becomes liable to the vendor for the price of such part; but he may reduce the vendor's claim by showing that he has sustained damage by the vendor's failure to fulfill his contract. Although this rule may be a relaxation of the earlier and more generally received doctrine, that the entire performance, on the part of the vendor, of such a contract as the one in question, is a condition precedent to the payment of the price, and the maintenance of an action for its recovery, the rule seems to be a fair and just one, and we are disposed to give it our acquiescence. It seems heretofore to have received recognition by this court."

We applied this rule in *Hime v. Klasey,* 9 Ill. App. 166, where there was a suit to recover for goods delivered and defense of recoupment because of the failure by plaintiff to perform in full and as agreed. It was held that plaintiff had not complied with his contract but that as the goods were received and used by defendant, the court properly held they should be paid for, and we there said:

"At the same time, we think that the appellant was entitled to recoup any damage he may have sustained by reason of the appellee's failure to furnish the balance of the staves under the contract."

We think these rules should be applied to this case. It follows that as defendant retained coal plaintiff did deliver it is bound to pay for it but defendant is entitled to recoup by reason of the failure of the plaintiff to complete the contract. We have not considered whether this applies to other contracts for other kinds of coal not filled by plaintiff.

Complaint is made of the refusal of certain instruc-

tions requested by defendant. Some of them are on the subject of set-off. Set-off and recoupment are not the same. We pointed out the difference and cited authorities in *Luther v. Mathis,* 211 Ill. App. 596. There was no plea of set-off and no notice of set-off with the plea of the general issue. The stipulation said the only question submitted to the jury was whether defendant was entitled to damages by way of recoupment. Instructions relating to set-off were therefore properly refused. No. 13 and No. 16 would have permitted a verdict for defendant for a sum over plaintiff's claim. Such a verdict is not permissible in recoupment. No. 14 was a general proposition of law, not applied to the case, and was therefore properly refused. It also included an element of damages too vague and general and not proper under the evidence. No. 15 required a verdict for defendant if the evidence was evenly balanced. This was not proper under the stipulation which required a verdict for plaintiff unless defendant established damages in recoupment, as to which the burden of proof was upon defendant.

The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*